# In the United States Court of Federal Claims

No. 06-506C
Filed May 25, 2007
**TO BE PUBLISHED**

| | | |
|---|---|---|
| SARANG CORPORATION, | * | Claim; |
| | * | Contract Disputes Act, |
| Plaintiff, | * | 41 U.S.C. § 601, *et seq.*; |
| | * | Federal Acquisition Regulations, |
| v. | * | 48 C.F.R. §§ 2.101, 33.208, 33.210; |
| | * | Interest; |
| THE UNITED STATES, | * | Motion to Dismiss, RCFC 12(b)(1), (b)(6); |
| | * | Prompt Payment Act, |
| Defendant. | * | 31 U.S.C. § 3901, *et seq*. |

**J. Cobbie de Graft**, Law Offices of J. Cobbie de Graft, Herndon, Virginia, counsel for Plaintiff.

**Robert E. Chandler**, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN, *Judge.***

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

On May 11, 2002, Plaintiff and the United States Department of Agriculture Forest Service ("Forest Service" or "Government") entered into Contract No. 50-3434-1-1524 requiring Plaintiff to perform certain construction-related services ("Contract"). *See* Am. Compl. ¶ 5; *see also* Gov't Mot. at 1. On March 17, 2003, Plaintiff submitted an Application for Payment of $258,993 to the contracting officer ("CO"). *See* App. A at 1. On June 25, 2003, Plaintiff submitted a Request for Equitable Adjustment to the CO for $198,263 for work performed outside the scope of the Contract,

[1] The relevant facts recited herein were derived from: Sarang Corporation ("Plaintiff")'s July 7, 2006 Complaint ("Compl."); Plaintiff's October 13, 2006 Motion to File Amended Complaint ("Pl. Mot. to Am."); Plaintiff's October 13, 2006 Amended Complaint ("Am. Compl.") and Appendices thereto ("App. A-C"); the Government's January 8, 2007 Motion to Dismiss ("Gov't Mot."); Plaintiff's March 5, 2007 Corrected Response ("Pl. Resp."); and the Government's April 18, 2007 Reply ("Gov't Reply").

as a result of changes alleged to have been directed by the Forest Service. *See* App. B at 1 ("We [Plaintiff] request additional sums . . . incurred due to changes in the scope of work as directed by the COR and extra costs associated with changes in field conditions."). On December 2, 2003, the CO signed the Certificate for Payment to Plaintiff in the amount of $258,993, but withheld $25,000, because of a continuing dispute over Plaintiff's June 25, 2003 Request for Equitable Adjustment. *See* App. A at 1 (CO noted on December 2, 2003 Certificate for Payment: "Work is 100% complete. Withholding of $25,000 pending final calculation of request for adjustment including late penalty.").

On July 19, 2005, the CO sent Plaintiff a letter rejecting the June 25, 2003 "certified claim," but proposing a settlement in the amount of $50,886. *See* App. B at 5 ("As indicated in my letter dated May 11, 2005, I am in receipt of your certified claim in the amount of $198,263.00. . . . I am willing to offer you $50,886.00 in full settlement of your claim.") On October 14, 2005, the parties entered into the Settlement Agreement for Plaintiff's June 25, 2003 Request for Equitable Adjustment, whereby the Forest Service agreed to pay $50,886 as "full accord and satisfaction of all amounts to which [Plaintiff] is entitled to in payment of the Request for Equitable Adjustment[.]" *Id.* at 3. The Forest Service, however, did not immediately remit the settlement amount of $50,886, and/or the $25,000 balance on the Contract. *See* Am. Compl. ¶ 7; *see also* Gov't Mot. at 2.

On July 7, 2006, Plaintiff filed a Complaint in the United States Court of Federal Claims, seeking $25,000 for breach of the Contract and $50,886 for breach of the Settlement Agreement, pursuant to Federal Acquisition Regulation ("FAR") § 33.210.[2] *See* Compl. ¶¶ 8, 9. In addition, the Complaint requested penalty interest, pursuant to the Prompt Payment Act ("PPA"), 31 U.S.C. § 3901 *et seq*., and FAR § 33.208, as well as attorney fees and costs, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. *See* Compl. at 4 (Prayer for Relief).

---

[2] FAR § 33.210 provides:

> Except as provided in this section, contracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the Act. In accordance with agency policies and 33.214, contracting officers are authorized to use ADR procedures to resolve claims. The authority to decide or resolve claims does not extend to--
>
> (a) A claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or determine; or
>
> (b) The settlement, compromise, payment or adjustment of any claim involving fraud.

48 C.F.R. § 33.210.

On July 21, 2006, the Forest Service paid Plaintiff $25,000 for the balance due on the Contract. *See* App. C; *see also* Am. Compl. ¶¶ 6-7. On August 15, 2006, the Forest Service paid Plaintiff $50,886 to satisfy the Settlement Agreement. *Id.*

On October 13, 2006, Plaintiff filed a Motion to Amend the July 7, 2006 Complaint, that the court granted. The Amended Complaint[3] seeks a declaratory judgment that the Forest Service's payments to Plaintiff were "late" as defined by the PPA. *See* Am. Compl. at 5 (Prayer for Relief). The Amended Complaint also seeks an award of late payment interest in the amount of "$2,683.00 under the first cause of action" and "$1,756.55 under the second cause of action," pursuant to the PPA and FAR § 33.208. *Id.* at 5-6.[4]

On January 8, 2007, the Government filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. On February 15, 2007, Plaintiff filed a Response. On February 20, 2007, Plaintiff filed a Motion to Correct the Response, that the court granted. On March 5, 2007, Plaintiff filed the Corrected Response. On April 18, 2007, the Government filed a Reply.

## II. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976)). Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.").

---

[3] Plaintiff requests that the court treat the initial Complaint as incorporated into the Amended Complaint, as "it was not [Plaintiff's] intent to have the [A]mended [C]omplaint supersede the [initial] [C]omplaint." *See* Pl. Resp. at 8. Upon the remittance of the amounts claimed in the initial Complaint, however, the initial Complaint became moot.

[4] Plaintiff states that it withdrew its initial demand for attorney's fees, but "intends to file appropriate claims for attorney's fees upon the successful adjudication of this case." Pl. Mot. to Am. at 2.

**1. The United States Court Of Federal Claims Has Jurisdiction To Award Interest.**

**a. Under The Contract Disputes Act, 41 U.S.C. § 611.**

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978 [41 U.S.C. § 601, *et seq*.]." 28 U.S.C. § 1491(a)(2); *see also* 41 U.S.C. § 609(a) ("Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary."). Although it is well established that "'interest cannot be recovered in a suit against the [G]overnment in the absence of an express waiver of sovereign immunity from an award of interest,'" Congress has authorized such a waiver under the Contract Disputes Act ("CDA"), 41 U.S.C. § 611. *Richlin Sec. Serv. Co.* v. *Chertoff*, 437 F.3d 1296, 1299 (Fed. Cir. 2006) (quoting *Library of Congress* v. *Shaw*, 478 U.S. 310, 311 (1986) (citation omitted)); *see also Zumerling* v. *Marsh*, 783 F.2d 1032, 1034 (Fed. Cir. 1986) ("[T]he issue of whether interest is allowable against the United States has always been considered a jurisdictional matter."). The CDA interest provision provides:

> Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41 (85 Stat. 97) for the Renegotiation Board.

41 U.S.C. § 611.

The interest authorized in the CDA is implemented by the FAR. *See* 48 C.F.R. § 33.208.[5]

---

[5] FAR § 33.208 provides, in relevant part:

> (a) The Government shall pay interest on a contractor's claim on the amount found due and unpaid from the date that--
>
> (1) The contracting officer receives the claim (certified if required by 33.207(a)); or
>
> (2) Payment otherwise would be due, if that date is later, until the date of payment.
>
> (b) Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the contracting officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim. (See

**b. Under The Prompt Payment Act, 31 U.S.C. § 3901.**

Under the PPA, Congress has also authorized interest to contractors when the Government is late in making payment for goods and services:

> [T]he head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due. The interest shall be computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611), which is in effect at the time the agency accrues the obligation to pay a late payment interest penalty.

31 U.S.C. § 3902(a); *see also New York Guardian Mortgagee Corp*. v. *United States*, 916 F.2d 1558, 1559-60 (Fed. Cir. 1990) (holding that the PPA applies only where the agency in question is acquiring goods or services from a contractor under a written contract).

Since the PPA allows a contractor to file a claim for late payment interest under the CDA, the contractor must satisfy the jurisdictional prerequisites of the CDA. *See* 31 U.S.C. § 3907(a) ("A claim for an interest penalty not paid under . . . [the PPA] may be filed under section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605)"); *see also CPT Corp*. v. *United States*, 25 Cl. Ct. 451, 456 (1992) (holding "that claims for interest under the PPA are subject to the procedural framework of the CDA" and "compliance with the CDA is a jurisdictional prerequisite to adjudicating a claim under the PPA"). PPA interest, however, may be awarded, even if the contractor does not specifically request it from the contracting officer. *See* 31 U.S.C. § 3902(c)(1) (PPA interest "shall be paid without regard to whether the business concern has requested payment of such penalty"); *see also* 5 C.F.R. § 1315.4(i) ("When payments are made after the due date, interest will be paid automatically in accordance with the procedures provided in [the PPA]."); *S. Comfort Builders, Inc.* v. *United States*, 67 Fed. Cl. 124, 131-32, 155-56 (holding that the PPA "does not require a contractor to ask for [PPA interest] in order to receive [PPA] interest," and awarding PPA interest, where contractor first requested it in the Complaint to the United States Court of Federal Claims on an appeal of a denied certified claim). PPA interest may accrue up to one year, but stops accruing once a CDA claim is filed. *See* 31 U.S.C. § 3907(b)(1). Thus, PPA interest does not accrue during the period a payment is in dispute. *Id.* at § 3907(c) ("[The PPA] does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract. A claim related to the dispute, and interest payable for the period during which the dispute is being resolved, is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601 *et seq*.)."); *see also Cargo Carriers,*

---

> 32.614 for the right of the Government to collect interest on its claims against a contractor).

48 C.F.R. § 33.208.

*Inc.* v. *United States*, 34 Fed. Cl. 634, 645 (1995), *aff'd*, 135 F.3d 775 (Fed. Cir. 1998) (holding that there was no waiver of sovereign immunity regarding PPA interest when nonpayment by the agency was the result of a dispute with a business concern).

**2. Jurisdictional Prerequisites Of The Contract Disputes Act, 41 U.S.C. § 601, *et seq.***

Under the CDA, a plaintiff must exhaust available administrative remedies by first submitting a "claim" to and obtaining a "final decision" from the contracting officer. *See* 41 U.S.C. § 605(a).[6]

Although the CDA does not define "claim," that term is defined in the FAR as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101;[7] *see also* 48 C.F.R. § 52.233-1(c)

---

[6] Section 605(a) of the Contract Disputes Act provides:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

41 U.S.C. § 605(a).

[7] The FAR defines a claim as follows:

> Claim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes

(containing the same language); 48 C.F.R. § 33.215 ("Insert the clause at 52.233-1, Disputes, in solicitations and contracts, unless the conditions in 33.203(b) apply."). The FAR specifies, however, that "[a] voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim." 48 C.F.R. § 2.101.

To comply with FAR § 2.101, the United States Court of Appeals for the Federal Circuit has held that a contractor must submit a written, non-routine demand to the contracting officer that seeks as a matter of right: payment of money in a sum certain, or an adjustment or interpretation of contract terms or other relief arising from or relating to the contract; and a final decision. *See England* v. *The Swanson Group, Inc.*, 353 F.3d 1375, 1380 (Fed. Cir. 2004) (holding that the Armed Services Board of Contract Appeals did not have jurisdiction, because the contractor failed to present to the contracting officer a "claim" within the meaning of the CDA (emphasis added)); *see also James M. Ellett Const. Co.* v. *United States*, 93 F.3d 1537, 1542-43 (Fed. Cir. 1996) ("[T]here are three requirements a nonroutine submission must meet to be a 'claim.' It must be: (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain. . . . [T]he CDA also requires that all claims be submitted to the contracting officer for a decision[,] [but] [t]his does not require an explicit request for a final decision; as long as what the contractor desires by its submissions is a final decision." (internal quotations and citations omitted)); *see also* 48 C.F.R. § 2.101. Beyond the general criteria set forth in the CDA and FAR, the United States Court of Appeals for the Federal Circuit has held that no particular formula or terminology is required for a claim:

> We know of no requirement in the [Contract] Disputes Act that a "claim" must be submitted in any particular form or use any particular wording. *All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.*

*Contract Cleaning Maint. Inc.* v. *United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (citations omitted; emphasis added); *see also Transamerica Ins. Corp.* v. *United States*, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (explaining that the United States Court of Appeals for the Federal Circuit "has definitively stated that certain 'magic words' need not be used and that the intent of the 'claim' governs" (citations omitted)).

In addition, if a claim is in excess of $100,000, the contractor also must certify that: the claim is made in good faith; the supporting data is accurate and complete; the amount requested accurately

---

> Act of 1978 until certified as required by the Act. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. § 2.101.

reflects the amount for which the contractor believes the Government is liable; and the certifier is duly authorized to certify the claim on behalf of the contractor. *See* 41 U.S.C. § 605(c)(1).

The contracting officer is required to issue a final decision on a submitted claim of $100,000 or less within sixty days of receipt. *See* 41 U.S.C. § 605(c)(1). For a certified claim of over $100,000, the contracting officer may inform the contractor when a final decision will be made, so long as it is within a reasonable time period. *Id.* at §§ 605(c)(2), (3). If the contracting officer does not make a decision within sixty days or does not inform the contractor when a decision will be rendered, the claim may be "deemed denied" and the contractor is authorized to file an appeal. *Id.* at § 605(c)(5).

A contracting officer's decision is "final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized [under the CDA]." *Id.* at § 605(b). A contractor may bring an action to the United States Court of Federal Claims within twelve months of the contracting officer's final decision. *Id.* at §§ 609(a)(1), (3).

The United States Court of Appeals for the Federal Circuit has "enforced the strict limits of the CDA as jurisdictional prerequisites to any appeal." *Swanson Group*, 353 F.3d at 1379 (internal quotation and citations omitted). Accordingly, "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *Id.*; *see also James M. Ellett Constr. Co.*, 93 F.3d at 1541-42 ("Thus for the [United States Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.").

In this case, Plaintiff invokes the jurisdiction of the United States Court of Federal Claims, pursuant to the CDA, for interest claims arising under both the CDA and PPA. *See* Am. Comp. ¶ 2 (citing 41 U.S.C. § 609(a)); *see also* 31 U.S.C. § 3907(a).

**B. Standard For Decision On A RCFC 12(b)(1) Motion To Dismiss.**

A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]").

When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial]

court's subject matter jurisdiction [is] put in question[,] it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction.").

**C. The Court's Resolution of the Government's January 8, 2007 Motion to Dismiss.**

**1. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Plaintiff's Claim For Interest On The $25,000 Contract Payment.**

**a. The Parties' Arguments.**

The Government argues that the court does not have jurisdiction to adjudicate Plaintiff's claim for interest on the $25,000 contract payment, because Plaintiff did not submit a "claim" to and receive a "final decision" from the CO for the $25,000 amount or interest thereon. *See* Gov't Mot. at 6; *see also* Gov't Reply at 1.

Plaintiff responds that, on March 17, 2003, a "claim" was submitted for payment in the amount of $283,993, for work completed on the Contract, including the $25,000 amount at issue. *See* Pl. Resp. at 4 (citing App. A at 1). Moreover, Plaintiff insists that "[t]here is simply no requirement under either the PPA or CDA . . . that the Forest Service's partial payment on the original claim of $283,993.00 should trigger an obligation upon [Plaintiff] to file a whole new separate claim for payment of the $25,000.00 balance." *Id.* at 5.

The Government replies that to satisfy the CDA, the "demand for payment must be 'non-routine.'" *See* Gov't Reply at 3 (quoting *ATK Thiokol* v. *United States*, 72 Fed. Cl. 306, 314 (2006)); *see also* 48 C.F.R. § 2.101. The Government contends, however, that Plaintiff has not alleged any facts to show that the March 17, 2003 "invoice was anything other than a routine request for payment for services rendered." *See* Gov't Reply at 3.

**b. The Court Has Determined That Plaintiff Did Not Submit A "Claim" For The $25,000 Contract Payment.**

The United States Court of Appeals for the Federal Circuit has held that the FAR "explicitly excludes from the definition of 'claim' those 'routine request[s] for payment' that are not in dispute when submitted to the CO." *Reflectone, Inc.* v. *Dalton*, 60 F.3d 1572, 1576 (Fed. Cir. 1995) ("[T]he critical distinction in identifying a 'claim' is . . . between routine and non-routine submissions." *Id.* at 1577); *see also* 48 C.F.R. § 2.101 ("*A voucher, invoice, or other routine request for payment* that is not in dispute when submitted is not a claim. *The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed* either as to liability or amount or is not acted upon in a reasonable time." (emphasis added)).

The court has determined that the March 17, 2003 Application for Payment has all the characteristics of a routine invoice. *See* App. A at 1. Although withholding $25,000 "pending final calculation of request for adjustment including late penalty" was not a routine measure, that action

was taken by the CO, and therefore has no effect on the nature of the *contractor's request* for payment. *Id.* (citing App. A at 1). Moreover, the CO's Certification of Payment made clear that the $258,993 payment for work completed on the Contract, including the withheld $25,000, was not an amount in dispute. *Id.* Instead, the dispute revolved around work allegedly performed outside the scope of the Contract, for which Plaintiff demanded payment in excess of $258,993, by filing a separate June 25, 2003 Request for Equitable Adjustment. *See* App. B at 1. In fact, when the Forest Service failed to timely remit the $25,000 balance due on the Certification of Payment, Plaintiff had the opportunity to convert it into a "claim," but never did so. *See* 48 C.F.R. §§ 2.101, 33.206(a).

Accordingly, the United States Court of Federal Claims does not have jurisdiction to adjudicate Plaintiff's claim for interest on the $25,000 withheld from the contract payment, because Plaintiff did not submit a "claim" to and receive a "final decision" from the CO for the $25,000 amount or interest thereon. *See* 41 U.S.C. § 605(a).

Because Plaintiff received the $25,000 contract payment on July 21, 2006, any claim for the principal amount would be moot. Accordingly, Plaintiff cannot recover CDA interest on the $25,000 amount, because CDA interest accrues only on an underlying "claim." *See* 41 U.S.C. § 611 ("Interest on amounts found due contractors on *claims* shall be paid[.]" (emphasis added)); *see also* 48 C.F.R. § 33.208 ("The Government shall pay interest on a *contractor's claim* on the amount found due and unpaid from the date that . . . [t]he contracting officer receives the claim . . . [or] [p]ayment otherwise would be due, if that date is later, until the date of payment." (emphasis added)). Plaintiff, however, may still submit a claim to the CO for PPA interest, which accrues from the date payment is due until either payment is made, a claim has been submitted, or a year has passed. *See* 31 U.S.C. § 3907(b)(1).

**2. The United States Court of Federal Claims Does Not Have Jurisdiction To Adjudicate Plaintiff's Claim For Interest On The $50,886 Settlement Payment.**

**a. The Parties' Arguments.**

The Government also argues that the court does not have jurisdiction to adjudicate Plaintiff's claim for interest on the $50,886 settlement payment, because Plaintiff did not submit a "claim" to and receive a "final decision" from the CO for the $50,886 amount or interest thereon. *See* Gov't Mot. at 9; *see also* Gov't Reply at 1.

Plaintiff counters that the June 25, 2003 Request for Equitable Adjustment in the amount of $198,263, was the "certified claim" underlying the $50,886 settlement payment.[8] *See* Pl. Resp. at 7; *see also* App. B at 1. Plaintiff notes that the CO's July 19, 2005 letter acknowledging receipt of the June 25, 2003 "certified claim" disputed the $198,263 amount claimed in the Request for Equitable Adjustment and proposed the $50,886 amount that was incorporated into the October 14, 2005 Settlement Agreement. *See* Pl. Resp. at 7 (citing App. B at 5); *see also* App. B at 3. Accordingly, Plaintiff argues that the June 25, 2003 "certified claim" for $198,263 resulted in a dispute, and the Settlement Agreement for $50,886 was a "final agency decision," thus meeting the CDA's jurisdictional prerequisites. *Id.*

The Government does not dispute that the June 25, 2003 Request for Equitable Adjustment was a "certified claim," but argues that there is no basis for Plaintiff's assertion that the Settlement Agreement constitutes a "final decision" by the CO. *See* Gov't Reply at 4-5; *see also* 41 U.S.C. § 605(a). Instead, the Government contends that Plaintiff's "claim for interest is founded upon an alleged late payment pursuant to the [S]ettlement [A]greement, and it claims interest with respect to the settlement amount only." Gov't Reply at 5 (citing Am. Compl. ¶ 10). The Government further argues that because the Settlement Agreement was executed independent of the Contract, instead of as a bilateral modification, a "claim" must be submitted to the CO for the separate dispute under the Settlement Agreement. *Id.*

In the alternative, the Government argues that the Settlement Agreement is not subject to the CDA, because the Settlement Agreement is "an agreement for the compromise of a dispute," and the CDA "applies only to contracts for the procurement of property, services, construction, alteration, repair or maintenance of real property or the disposal of personal property." *See* Gov't Mot. at 12,

[8] Under case law from the United States Court of Appeals for the Federal Circuit, the June 25, 2003 Request for Equitable Adjustment was a CDA "claim," as it was a non-routine, written demand, as a matter of right, for payment of sum certain, that implicitly requested a final agency decision. *See James M. Ellett Constr. Co.,* 93 F.3d at 1542-44 ("Requests for an equitable adjustment submitted in response to contract change . . . are precisely the type of claims we held were nonroutine in *Reflectone*." *Id.* at 1546.).

10 (citing 41 U.S.C. § 602(a)[9]); *see also* Gov't Reply at 5. Likewise, the Government contends that the Settlement Agreement is not subject to the PPA, because that statute "applies only to late payments for the acquisition of 'property or service.'" *See* Gov't Mot. at 13 (citing 31 U.S.C. § 3902(a)).

**b. The Court Has Determined That Plaintiff Did Not Submit A "Claim" For The $50,886 Settlement Payment.**

The United States Court of Appeals for the Federal Circuit has not directly addressed the issue of whether a settlement agreement can be a final decision of the contracting officer. However, in *Rex Sys., Inc.*, the United States Court of Appeals for the Federal Circuit stated in dicta that: by its nature, "a settlement agreement is not a 'final decision' by the [contracting officer], but instead a mutually

[9] Section 602(a) of the Contract Disputes Act provides:

(a) Executive agency contracts

Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for--

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or,

(4) the disposal of personal property.

41 U.S.C. § 602(a).

agreed upon resolution of . . . rights." *See Rex Sys., Inc.* v. *Cohen*, 224 F.3d 1367, 1371 (Fed. Cir. 2000).[10]

Although Plaintiff initially submitted a "certified claim" for $198,263 to the CO, Plaintiff made a business decision to abandon its claim and *agree* to the $50,886 settlement amount. *See* App. B at 3. Accordingly, before Plaintiff may bring suit in the United States Court of Federal Claims, it must submit a "claim" to the CO with respect to a dispute arising out of the Settlement Agreement and then receive a "final decision."

Because Plaintiff received the $50,886 settlement payment on August 15, 2006, any claim for the principal amount would be moot. Accordingly, Plaintiff cannot recover CDA interest on the $50,886, because CDA interest accrues only on an underlying "claim." *See* 41 U.S.C. § 611 ("Interest on amounts found due contractors on *claims* shall be paid[.]"(emphasis added)); *see also* 48 C.F.R. § 33.208 ("The Government shall pay interest on a *contractor's claim* on the amount found due and unpaid from the date that . . . [t]he contracting officer receives the claim . . . [or] [p]ayment otherwise would be due, if that date is later, until the date of payment." (emphasis added)). Plaintiff, however, may still submit a claim to the CO for PPA interest, which accrues from the date payment is due until payment is made, a claim is submitted, or a year has passed. *See* 31 U.S.C. § 3907(b)(1).[11]

---

[10] In *Rex Sys., Inc.*, the plaintiff asked the United States Court of Appeals for the Federal Circuit to hold that the plaintiff was "entitled to interest on its negotiated termination settlement amount because . . . the negotiations over the amount had broken down, or reached an 'impasse,' thus converting its termination settlement proposal into a CDA claim." 224 F.3d at 1371. The Federal Circuit, however, held that the plaintiff's termination settlement proposal was not a "claim" within the meaning of the CDA, because a "claim" must include an express or implied request for a final decision. *Id.* at 1371-74. The plaintiff did not, however, request a final decision, because negotiations never broke down and instead resulted in a settlement agreement. *Id.* While the case at bar involves a different, albeit related, legal question—whether a settlement agreement constitutes a final agency decision—the reasoning underlying the Federal Circuit's decision in *Rex Sys.* is applicable to this case.

[11] The Government also argues that Plaintiff is not entitled to interest, pursuant to CDA § 611 and FAR § 33.208, because both provide for interest on amounts "found due" on claims; however, no amount will be "found due" in this case, since the Government has remitted payment. *See* Gov't Mot. at 11. *See* 41 U.S.C. § 611; *see also* 48 C.F.R. § 33.208.

Although the court does not reach this issue, it agrees with the Government. CDA § 611 and FAR § 33.208 authorize the United States Boards of Contract Appeals and the United States Court of Federal Claims to make contractors whole, where an agency has made an erroneous final decision in denying a claim. The court, however, does not have jurisdiction to award CDA interest on an amount that the Government voluntarily paid to the contractor prior to and independent of any judgment by the court.

**c. The Court Has Determined That The Settlement Agreement Is Subject To The CDA And PPA.**

The court disagrees with the Government's argument that the Settlement Agreement is not subject to either the CDA or PPA, because it is merely an "agreement for the compromise of a dispute." *See* Gov't Mot. at 12. On the contrary, FAR § 33.202 provides that the CDA establishes "procedures and requirements for asserting and *resolving* claims subject to the [CDA]," and FAR § 33.210 authorizes contracting officers to "decide or *resolve* all claims," with the option of using ADR procedures. *See* 48 C.F.R. §§ 33.202, 33.210 (emphasis added). Accordingly, the Settlement Agreement was a CDA mechanism for resolving Plaintiff's June 25, 2003 "certified claim." *See* Am. Compl. ¶ 7; *see also* Gov't Mot. at 2. Although Plaintiff abandoned the June 25, 2003 "certified claim" when the Settlement Agreement was signed, the Agreement is sufficiently related to the Contract that the CDA and PPA apply. As the CO's July 19, 2005 letter proposing settlement recognized, the $50,886 payment was for excess "property" and "services" provided by Plaintiff under the Contract:

> I am willing to offer you $50,886.00 in full settlement of your claim. This cost is based on the full cost of the reception desk, one-half the cost of the temporary water, the additional PGE for the South Parking Lot, $989.00 for the Miscellaneous Items, the full request for the temporary facilities, and one-half the supervision and one-quarter the project manager costs requested in the Request for Equitable Adjustment.
>
> If you are in agreement with this settlement proposal, please review and sign the enclosed forms.

App. B at 5; *see also* 41 U.S.C. § 602(a) (stating that the CDA applies to the procurement of property, services, construction, alteration, repair or maintenance of real property, and the disposal of personal property); 31 U.S.C. § 3902(a) (stating that the PPA applies to "property or service" acquired by an agency from a business).

Accordingly, the interest provisions of the CDA and PPA apply to the Settlement Agreement. *See Zumerling,* 783 F.2d at 1034 ("[T]he issue of whether interest is allowable against the United States has always been considered a jurisdictional matter.").[12]

**D. The Court Stays Proceedings In This Case To Allow Plaintiff To Submit A Claim To And Receive A Final Decision From The CO.**

For the aforementioned reasons, the court has determined that it does not have jurisdiction to adjudicate Plaintiff's October 13, 2006 Amended Complaint, pursuant to CDA § 605(a).

[12] Because the court has concluded that it does not have jurisdiction to adjudicate the October 13, 2006 Amended Complaint, the court does not reach the Government's other arguments regarding the Motion to Dismiss for failure to state a claim on which relief can be granted.

Nonetheless, it is not clear to the court why the $25,000 amount initially was withheld from the contract payment. The Government should have, at the very least, paid both the $25,000 and $50,886 amounts to Plaintiff shortly after the Settlement Agreement was reached on October 14, 2005. Instead, the Government forced Plaintiff to expend the time and resources to bring an action in the United States Court of Federal Claims, before remitting payment nearly a year later. Although the CDA requires Plaintiff to exhaust administrative remedies by submitting a "claim" to and receiving a "final decision" from the CO, before the United States Court of Federal Claims has authority to award PPA interest, this does not excuse the Government's tardiness in remitting payment. As Congress stated when enacting the 1988 amendments to the PPA:

> The Prompt Payment Act of 1982 was enacted in order to provide incentives for the Federal Government to pay its bills on time. It had become apparent that the Government's bill paying record was so poor that many companies were being discouraged from competing for the Government's business and those that did compete were being encouraged to inflate their bids to reflect anticipated financing costs to cover late payments.

H.R. REP. NO. 100-784, at 9 (1988) *reprinted in* 1988 U.S.C.C.A.N. 3036, 3036-37.

Therefore, if Plaintiff submits a claim to the CO for PPA interest, Plaintiff will be able to recover up to a year's worth of interest on the late payments. Because a CDA "claim" is not required for Plaintiff to be awarded PPA interest, the court expects that the Forest Service promptly will pay the amount due, without requiring Plaintiff to incur further costs. *See* 31 U.S.C. § 3902(c)(1) (PPA interest "shall be paid without regard to whether the business concern has requested payment of such penalty"); *see also* 5 C.F.R. § 1315.4(i) ("When payments are made after the due date, interest will be paid automatically in accordance with the procedures provided in [the PPA].").

Accordingly, the court stays proceedings in this case to allow Plaintiff to submit a claim to and receive a final decision from the CO for PPA interest. *See* 41 U.S.C. § 605(c)(5) ("[I]n the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer."); *see also Durable Metal Prods., Inc*., v. *United States*, 21 Cl. Ct. 41, 46 (1990) ("[T]he Department of Justice attorneys . . . have the sole authority and control over the conduct of [a suit filed in the United States Claims Court] on behalf of the [Government]. Likewise, when the CO fails to issue a decision within the statutorily prescribed time period and the contractor chooses to deem its claim denied, it may file suit in the United States Claims Court. In that event, under the CDA, the CO is divested of his authority over plaintiff's claim unless the Claims Court, in its discretion, concludes to stay the action and remand it to the contracting officer pursuant to 41 U.S.C. § 605(c)(5).").

## III. CONCLUSION.

Accordingly, the court hereby stays this case for a period of ninety days for Plaintiff to file a claim with and receive a final decision from the CO. If the Forest Services pays the PPA interest penalty before Plaintiff files a claim, the parties will notify the court and final judgment on the Government's January 8, 2007 Motion to Dismiss will be entered.

**IT IS SO ORDERED.**

**s/ Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**