# In the United States Court of Federal Claims

No. 06-506C
Filed: August 15, 2008
(Not For Publication)

*************************************

SARANG CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*************************************

**J. Cobbie de Graft**, Law Offices of J. Cobbie de Graft, Herndon, Virginia, Counsel for Plaintiff.

**Robert E. Chandler**, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., Counsel for Defendant.

**MEMORANDUM OPINION AND FINAL ORDER.**

**BRADEN, *Judge.***

## I. FACTUAL BACKGROUND.[1]

On May 11, 2001, Plaintiff and the United States Department of Agriculture Forest Service ("Forest Service" or "Government") entered into Contract No. 50-3434-1-1524, requiring Plaintiff to perform certain construction-related services ("May 11, 2001 Contract"). *See* First Am. Compl. ¶ 5; *see also* Gov't Mot. at 1.

On March 17, 2003, Plaintiff submitted an Application for Payment of $258,993 to the relevant Contracting Officer ("CO"). *See* Att. A at 1. On June 25, 2003, Plaintiff also submitted a Request for Equitable Adjustment to the CO in the amount of $198,263 for work performed outside the scope of the May 11, 2001 Contract, allegedly because of changes directed by the Forest Service. *See* Att. B at 1 ("[W]e [Plaintiff] request additional sums . . . that were incurred due to changes in the scope of work as directed by the COR and extra costs associated with changes in field conditions."). On December 2, 2003, the CO signed a Certificate for Payment to Plaintiff in the amount of $258,993, but withheld $25,000, because of a continuing dispute over the June 25, 2003 Request for Equitable Adjustment. *See* Att. A at 1 (CO noted on Dec. 2, 2003 Certificate for Payment: "Work is 100% complete. Withholding of $25,000 pending final calculation of request for adjustment including late penalty.").

On July 19, 2005, the CO sent Plaintiff a letter rejecting the June 25, 2003 "certified claim," but proposing a settlement in the amount of $50,886. *See* Att. B at 7 ("As indicated in my letter dated May 11, 2005, I am in receipt of your certified claim in the amount of $198,263.00. . . . I am willing to offer you $50,886.00 in full settlement of your claim."). On October 14, 2005, the parties entered into a Settlement Agreement regarding Plaintiff's June 25, 2003 Request for Equitable Adjustment, wherein the Forest Service agreed to pay $50,886, as "full accord and satisfaction of all amounts to which [Plaintiff] is entitled to in payment of the Request for Equitable Adjustment[.]" *Id.* at 5. The Forest Service, however, did not remit the settlement amount of $50,886, and/or the $25,000 balance due on the May 11, 2001 Contract. *See* First Am. Compl. ¶¶ 6-7; *see also* Gov't Mot. Dis. I at 2.

---

[1] The relevant facts recited herein were derived from: *Sarang* v. *United States*, 76 Fed. Cl. 560 (2007) ("*Sarang I*"); Sarang Corporation ("Plaintiff")'s July 7, 2006 Complaint ("Compl."); Plaintiff's October 13, 2006 Motion To File Amended Complaint ("Pl. Mot. to Am."); Plaintiff's October 13, 2006 First Amended Complaint ("First Am. Compl.") and Attachments thereto ("Att. A-C"); the Defendant ("Government")'s January 8, 2007 Motion to Dismiss ("Gov't Mot. Dis. I"); Plaintiff's March 5, 2007 Corrected Response ("Pl. Resp."); the Government's April 18, 2007 Reply ("Gov't Reply"); the October 16, 2007 Contracting Officer Decision on Remand ("CO Rem."); Plaintiff's January 31, 2008 Second Amended Complaint ("Sec. Am. Compl."); the Government's February 19, 2008 Answer ("Gov't Answer"); the May 2, 2008 Joint Preliminary Status Report ("Status Report"); Plaintiff's June 2, 2008 Motion For Judgment On The Pleadings ("Pl. Mot. J. Pl."); the Government's July 16, 2008 Motion To Dismiss ("Gov't Mot. Dis. II") and Response To Plaintiff's Motion For Judgment On The Pleadings ("Gov't Resp. Mot. J. Pl."); and the July 23, 2008 Telephone Conference ("7/23/08 TR 1-9").

## II. PROCEDURAL HISTORY.

On July 7, 2006, Plaintiff filed a Complaint in the United States Court of Federal Claims, seeking $25,000 for breach of the May 11, 2001 Contract ("Claim One") and $50,886 for breach of the October 14, 2005 Settlement Agreement ("Claim Two"), pursuant to Federal Acquisition Regulation ("FAR") 33.210.[2] *See* Compl. ¶¶ 8-9. The July 7, 2006 Complaint also requested penalty interest, pursuant to the Prompt Payment Act ("PPA"), 31 U.S.C. § 3901 *et seq*.,[3] and FAR 33.208,[4] as well as attorney fees and costs, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[5] *See* Compl. at 4 (Prayer For Relief).

---

[2] FAR 33.210 provides, in relevant part, that:

> [C]ontracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the [Contract Disputes] Act.

48 C.F.R. § 33.210.

[3] The Prompt Payment Act provides, in relevant part, that:

> the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due.

31 U.S.C. § 3902(a).

[4] FAR 33.208 provides, in relevant part, that:

> (a) The Government shall pay interest on a contractor's claim on the amount found due and unpaid from the date that --
> (1) The contracting officer receives the claim (certified if required by 33.207(a)); or
> (2) Payment otherwise would be due, if that date is later, until the date of payment.

48 C.F.R. § 33.208(a).

[5] The Equal Access to Justice Act provides, in relevant part, that:

> [A] court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and

On July 21, 2006, the Forest Service paid Plaintiff the $25,000 balance due on the Contract. *See* Sec. Am. Compl. ¶ 8. On August 15, 2006, the Forest Service paid Plaintiff $50,886 to satisfy the Settlement Agreement. *Id.*

On October 13, 2006, Plaintiff filed a Motion To Amend the July 7, 2006 Complaint, that the court granted on October 18, 2006. The October 13, 2006 First Amended Complaint ("First Am. Compl.")[6] requested a declaratory judgment that the above-referenced Forest Service payments were "late," as defined by the PPA. *See* First Am. Compl. at 5 (Prayer For Relief). The First Amended Complaint also asked for an award of late payment interest in the amount of "$2,683.00 under the first cause of action" and "$1,756.55 under the second cause of action[,]" pursuant to the PPA and FAR 33.208. *Id.* at 5-6.[7]

On January 8, 2007, the Government filed a Motion To Dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. On February 15, 2007, Plaintiff filed a Response. On February 20, 2007, Plaintiff filed a Motion To Correct The Response, that the court granted. On March 5, 2007, Plaintiff filed the Corrected Response. On April 18, 2007, the Government filed a Reply.

On May 25, 2007, the court issued a Memorandum Opinion And Order, holding that Plaintiff did not submit a "claim" for interest pursuant to the Contract Disputes Act ("CDA"), on either the $25,000 contract payment or the $50,866 settlement claim. *See Sarang I*, 76 Fed. Cl. at 564-68 (citing 41 U.S.C. § 605(a)) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."). On May 25, 2007, when *Sarang I* was issued, Plaintiff had received a $25,000 Contract payment, as well as a $50,866 settlement payment from the Government. Therefore, Plaintiff's CDA interest claim was moot, because CDA interest accrues only on an underlying CDA claim. *See* 48 C.F.R. § 33.208 ("The Government shall pay interest on a contractor's claim on the amount found due and unpaid from the date that . . . [t]he contracting officer receives the claim . . . [or] [p]ayment otherwise would be due, if that date is later, until the date of payment."); *see also Sarang I*, 76 Fed. Cl. at 567-68. The court, however, stayed proceedings for ninety days to allow Plaintiff to submit a claim for PPA

---

> expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).

[6] Plaintiff requests that the court treat the July 7, 2006 Complaint, as incorporated into the subsequent October 13, 2006 First Amended Complaint, as "[i]t was not [Plaintiff's] intent to have the [October 13, 2006 First A]mended [C]omplaint supersede the [July 7, 2006] [C]omplaint." *See* Pl. Resp. at 8.

[7] Plaintiff also withdrew an initial demand for attorneys' fees, but "intends to file appropriate claims for attorney's fees upon the successful adjudication of this case." Pl. Mot. to Am. at 2.

interest on both the Contract and Settlement amounts to the CO for a final decision. *See Sarang I*, 76 Fed. Cl. at 569-70. The court concluded that the Settlement Agreement is subject to the interest provisions of the PPA, because the "Agreement [was] sufficiently related to the [underlying] Contract[.]" *Id.* at 569.

On August 15, 2007, Plaintiff sent a letter to the CO formally requesting PPA interest payment for both claims. *See* Sec. Am. Compl. at 9-12. Plaintiff calculated the PPA interest due as $1,018.54 and $1,769.70, respectively, on the $25,000 and $50,886 claims. *Id.* at 10-11; *see also* 5 C.F.R. § 1315.10(a)(1) ("Interest will be calculated from the day after the payment due date through the payment date at the interest rate in effect on the day after the payment due date.")[8]; *Id.* § 1315.17(c) (monthly compounding interest formula). Plaintiff also requested additional penalty interest, pursuant to FAR 1315.11(c), in the amount of $1,018.54 for Claim One and $1,769.70 for Claim Two. *See* Sec. Am. Compl. at 10-11; *see also* 5 C.F.R. § 1315.11(c) ("additional penalty paid shall not be less than $25").

On November 2, 2007, the Government filed a Notice of the CO's October 16, 2007 Decision On Remand ("CO Rem."), wherein the CO agreed, in part, and denied, in part, Plaintiff's claims for PPA interest on the $25,000 and $50,866 amounts. *See Sarang* v. *United States*, No. 06-506 (Fed. Cl. Nov. 2, 2007). The CO agreed to award $734.25 on Claim One, paying interest only for the time period between December 1, 2005 and July 21, 2006.[9] *Id.* The CO, however, denied additional penalty interest on Claim One, under FAR 1315.11(a)(3), because Plaintiff did not request the

---

[8] The payment due date is calculated pursuant to FAR 32.904(d). *See* 48 C.F.R. § 32.904(d) (The due date is the later of either the 30th day after the billing office receives an invoice from the contractor or the 30th day after the Government accepts the contractor's work or service, which for settlement actions is the 30th day after the date of the contract settlement.).

[9] The PPA does not apply when the payment amount is in dispute. *See* 31 U.S.C. § 3907(c) ("[The PPA] does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract."). In this case, the CO asserts that the $25,000 withheld was in dispute from December 2, 2003 to October 31, 2005, and therefore the payment due date was December 1, 2005 (the 30th after the end of the dispute). *See* 48 C.F.R. § 32.904(d); *see also Sarang* v. *United States*, No. 06-506 (Fed. Cl. Nov. 2, 2007). If the $25,000 withheld is characterized as a dispute, however, that dispute ended on October 14, 2005 (not October 31, 2005), when the parties entered the Settlement Agreement. *See* Sec. Am. Compl. at 21; *see also Sarang I*, 76 Fed. Cl. at 566 ("[T]he CO's Certification of Payment made clear that the . . . withheld $25,000 was not an amount in dispute."). Therefore, the payment due date, calculated under FAR 32.904(d), should be November 14, 2005. *See* 48 C.F.R. § 32.904(d); *see also* 5 C.F.R. § 1315.10(c)(1) (PPA interest is not required "[w]hen payment is delayed because of a dispute between a Federal agency and a vendor over the amount of the payment or other issues concerning compliance with the terms of a contract.").

penalty in writing "by the 40th day after payment was made."[10] *See* 5 C.F.R. § 1315.11(a)(3) (written request by vendor for additional penalty payment "must be postmarked, received by facsimile, or by electronic mail by, the 40th day after payment was made."); *see also* CO Rem., *Sarang* v. *United States*, No. 06-506 (Fed. Cl. Nov. 2, 2007). The CO denied PPA interest on Claim Two, contending that the PPA does not apply to interest claims on the Settlement Agreement. *See* CO Rem., *Sarang* v. *United States*, No. 06-506 (Fed. Cl. Nov. 2, 2007).

On November 21, 2007, the Government filed a Notice, pursuant to RCFC 52.2(b)(4),[11] to allow Plaintiff an opportunity to amend the First Amended Complaint. On January 7, 2008, the court issued a Scheduling Order, setting Plaintiff's deadline for filing a Second Amended Complaint on January 31, 2008.

On January 31, 2008, Plaintiff filed a Second Amended Complaint ("Sec. Am. Compl.").[12] Claim One seeks $734.25, the amount awarded by the CO in the October 16, 2007 Decision On Remand.[13] *See* Sec. Am. Compl. ¶ 12. Claim Two seeks a PPA interest payment of $1,769.70 for

---

[10] On July 21, 2006, the Government paid Plaintiff $25,000. *See* First Am. Compl. ¶ 6. On August 15, 2006, Plaintiff executed a written request for a Final Decision on claims for PPA interest. *See* Sec. Am. Compl. at 27; *see also* 48 C.F.R. § 32.904(d).

[11] RCFC 52.2(b)(4) provides, in relevant part:

> Within 30 days after the filing of a decision or final action pursuant to subdivision (3), each party shall file with the clerk a notice indicating whether or not the final decision or final action on remand affords a satisfactory basis for disposition of the claim at the administrative level, or whether further proceedings before the court are deemed required, and, if such proceedings are desired, what those proceedings should be.

RCFC 52.2(b)(4).

[12] Plaintiff did not submit any exhibits to the court, but instead attached relevant records to the Second Amended Complaint.

[13] Although Plaintiff claimed $2,037.08 in interest in the August 15, 2007 Request for the CO's Final Decision, the Second Amended Complaint requested payment only of the $734.25 agreed to by the CO, in the October 16, 2007 Decision On Remand. *See* Sec. Am. Compl. ¶10; *see also* Sec. Am. Compl. at 10 (Aug. 15, 2007 facsimile from Plaintiff's Counsel to Forest Service, requesting final decision from CO); CO Rem., *Sarang* v. *United States*, No. 06-506 (Fed. Cl. Nov. 2, 2007).

the settlement claim, as well as "such other relief as the [c]ourt deems appropriate."[14] *Id.* ¶¶ 13-15; *see also* Sec. Am. Compl. at 7 (Prayer For Relief).

On February 19, 2008, the Government filed an Answer ("Gov't Answer"), arguing that the Second Amended Complaint failed to meet the jurisdictional prerequisites of the CDA. *See* Gov't Answer ¶ 3. The Government conceded that Plaintiff should be awarded a PPA interest payment of $734.25 for the $25,000 claim, but that payment had yet to be made. *Id.* ¶ 2.

On May 2, 2008, the parties submitted a Joint Preliminary Status Report ("Status Report") indicating that Plaintiff intended to file a Motion For Judgment On The Pleadings[15] and the Government intended to file a Motion To Dismiss. On that date, the court entered a Scheduling Order.

On June 2, 2008, Plaintiff filed a Motion For Judgment On The Pleadings ("Pl. Mot. J. Pl."), arguing that the Government should pay $734.25, because the CO awarded that amount in the October 16, 2007 Decision On Remand. *See* Pl. Mot. J. Pl. at 5. Plaintiff also argued that the Government owed an additional $1,769.70, because the Settlement Agreement is sufficiently related to the May 11, 2001 Contract to be subject to PPA interest. *Id.* at 6-7.

On July 16, 2008, the Government filed the Response To Plaintiff's Motion For Judgment On The Pleadings ("Gov't Resp. Mot. J. Pl.") and the Motion To Dismiss for lack of subject matter jurisdiction ("Gov't Mot. Dis. II").

On July 23, 2008, the court convened a status conference to determine why the Government had not disbursed at least the $734.25 in PPA interest that the CO awarded Plaintiff on October 16, 2007.

---

[14] Although Plaintiff claimed $1,769.70 in penalty interest for Claim Two, the August 15, 2007 request letter for final CO decision did not seek payment for additional penalty interest, pursuant to 5 C.F.R. § 1315.11. *See* 5 C.F.R. §1315.11 ("A vendor shall be entitled to an additional penalty payment when the vendor is owed a late payment interest penalty by an agency of $1.00 or more, if it:" makes the request in writing and the payment is more than 10 days late); *see also* Sec. Am. Compl. at 11 (Aug. 15, 2007 facsimile from Plaintiff's Counsel to Forest Service, requesting final decision from CO).

[15] RCFC 12(c) provides, in relevant part, that "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." *See* RCFC 12(c).

## III. DISCUSSION.

### A. Jurisdiction Under The Tucker Act, 28 U.S.C. § 1491(a)(1).

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States* v. *Testan*, 424 U.S. 392, 398 (1976)). Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.").

### B. Jurisdiction Under The Contract Disputes Act, 41 U.S.C. §§ 601, *et seq*.

Under the CDA, a plaintiff must exhaust available administrative remedies by submitting a "claim" to and obtaining a "final decision" from the relevant contracting officer. *See* 41 U.S.C. §

605(a).[16] Although the CDA does not define "claim," that term is defined in the FAR as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101; *see also* 48 C.F.R. § 52.233-1(c) (same); 48 C.F.R. § 33.215 ("Insert the clause at 52.233-1, Disputes, in solicitations and contracts, unless the conditions in 33.203(b) apply."). The FAR specifies, however, that "[a] voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim." 48 C.F.R. § 2.101.

To comply with FAR 2.101, the United States Court of Appeals for the Federal Circuit has held that a contractor must submit a written, non-routine demand to the contracting officer that seeks as a matter of right: payment of money in a sum certain, or an adjustment or interpretation of contract terms or other relief arising from or relating to the contract; and a final decision. *See England* v. *Swanson Group, Inc.*, 353 F.3d 1375, 1380 (Fed. Cir. 2004) (holding that the Armed Services Board of Contract Appeals did not have jurisdiction, where the contractor failed to present the contracting officer a "claim" within the meaning of the CDA); *see also James M. Ellett Const. Co.* v. *United States*, 93 F.3d 1537, 1542-43 (Fed. Cir. 1996) ("[T]here are three requirements a nonroutine submission must meet to be a 'claim.' It must be: (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain. . . . [T]he CDA also requires that all claims be submitted to the contracting officer for a decision[,] [but] [t]his does not require an explicit request for a final decision; as long as what the contractor desires by its submissions is

---

[16] Section 605(a) of the Contract Disputes Act provides:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

41 U.S.C. § 605(a).

a final decision[.]" (internal quotations and citations omitted)); *see also* 48 C.F.R. § 2.101. The United States Court of Appeals for the Federal Circuit has held that no particular formula or terminology is required for a claim:

> We know of no requirement in the [Contract] Disputes Act that a "claim" must be submitted in any particular form or use any particular wording. *All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.*

*Contract Cleaning Maint. Inc.* v. *United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (citations omitted; emphasis added); *see also Transamerica Ins. Corp.* v. *United States*, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (explaining that "certain 'magic words' need not be used and that the intent of the 'claim' governs." (citations omitted)).

If a claim is in excess of $100,000, however, the contractor also must certify that: the claim is made in good faith; the supporting data is accurate and complete; the amount requested accurately reflects the amount for which the contractor believes the Government is liable; and the certifier is duly authorized to certify the claim on behalf of the contractor. *See* 41 U.S.C. § 605(c)(1).

The contracting officer is required to issue a final decision on any claim of $100,000 or less within sixty days of receipt. *Id*. For a certified claim of over $100,000, the contracting officer may inform the contractor when a final decision will be made, so long as it is within a reasonable time period. *Id.* §§ 605(c)(2), (3). If the contracting officer does not make a decision within sixty days or does not inform the contractor when a decision will be rendered, the claim may be "deemed denied" and the contractor is authorized to file an appeal. *Id.* § 605(c)(5). A contracting officer's decision is "final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized [under the CDA]." *Id.* § 605(b). A contractor has one year to initiate an action in the United States Court of Federal Claims to review the contracting officer's final decision. *Id.* §§ 609(a)(1), (3).

The United States Court of Appeals for the Federal Circuit has "enforced the strict limits of the CDA as jurisdictional prerequisites to any appeal." *Swanson Group*, 353 F.3d at 1379 (internal quotation and citations omitted). Accordingly, "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *Id.*; *see also James M. Ellett Constr.*, 93 F.3d at 1541-42 ("Thus for the [United States Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.").

### C. Jurisdiction Under The Prompt Payment Act, 31 U.S.C. §§ 3901, *et seq*.

Congress has authorized the payment of interest to contractors when the Government is late in making payment for goods and services:

> [T]he head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due. The interest shall be computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611), which is in effect at the time the agency accrues the obligation to pay a late payment interest penalty.

31 U.S.C. § 3902(a); *see also New York Guardian Mortgagee Corp*. v. *United States*, 916 F.2d 1558, 1559-60 (Fed. Cir. 1990) (holding that the PPA applies only where the agency in question is acquiring goods or services from a contractor under a written contract).

Although the PPA allows a contractor to file a claim for "late payment" interest, the contractor still must satisfy the CDA's jurisdictional prerequisites. *See* 31 U.S.C. § 3907(a) ("A claim for an interest penalty not paid under . . . [the PPA] may be filed under section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605)."); *see also CPT Corp*. v. *United States*, 25 Cl. Ct. 451, 456 (1992) (holding "that claims for interest under the PPA are subject to the procedural framework of the CDA" and "compliance with the CDA is a jurisdictional prerequisite to adjudicating a claim under the PPA"). PPA interest, however, may be awarded regardless of a specific contractor request. *See* 31 U.S.C. § 3902(c)(1) (PPA interest "shall be paid without regard to whether the business concern has requested payment of such penalty"); *see also* 5 C.F.R. § 1315.4(i) ("When payments are made after the due date, interest will be paid automatically in accordance with the procedures provided in [the PPA]."); *S. Comfort Builders, Inc.* v. *United States*, 67 Fed. Cl. 124, 131-32, 155-56 (2005) (holding that the PPA "does not require a contractor to ask for [PPA] interest in order to receive [PPA] interest," and awarding PPA interest, where contractor first requested instead on an appeal of a denied certified claim). PPA interest may accrue up to one year, but stops accruing once a CDA claim is filed. *See* 31 U.S.C. § 3907(b)(1). Therefore, PPA interest does not accrue during the period that a payment is in dispute. *Id.* § 3907(c) ("[The PPA] does not require an interest penalty on a payment that is not made[,] because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract. A claim related to the dispute, and interest payable for the period during which the dispute is being resolved, is subject to the Contract Disputes Act of 1978[.]"); *see also Cargo Carriers, Inc.* v. *United States*, 34 Fed. Cl. 634, 645 (1995), *aff'd*, 135 F.3d 775 (Fed. Cir. 1998) (holding that there was no waiver of sovereign immunity for PPA interest when nonpayment by the agency was the result of a dispute with a business concern).

On August 15, 2007, Claims One and Two (PPA interest on $25,000 contract payment and $50,866 Settlement Agreement) were submitted to the CO, and on October 16, 2007, the CO issued a Decision On Remand. *See* 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer[.]"); *see also* Sec. Am. Compl. at 9-12 (Aug. 15, 2007 facsimile from Plaintiff's counsel to Forest Service, requesting final decision from CO); CO Rem., *Sarang* v. *United States*, No. 06-506 (Fed. Cl. Nov. 2, 2007).

### D. The Government's July 16, 2008 Motion To Dismiss.

#### 1. Standard For Decision On A RCFC 12(b)(1) Motion To Dismiss.

A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]").

When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question[,] it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction.").

#### 2. The Government's Arguments.

The Government argues that the court does not have jurisdiction to adjudicate the interest claims alleged in Plaintiff's January 31, 2008 Second Amended Complaint, because the court did not have authority on May 25, 2007 to stay the case, pursuant to 41 U.S.C. § 605(c)(5).[17] *See* Gov't

---

[17] Section 605(c)(5) of Contract Disputes Act states:

> Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this Act. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer.

41 U.S.C. § 605(c)(5).

Mot. Dis. II at 6. It is the Government's position that section 605(c)(5) authorizes a court to stay a case only following the CO's deemed denial of the claim asserted therein. *Id.* at 7-8 (citing *Tecom Indus., Inc.* v. *United States*, 24 Cl. Ct. 611, 614 (1991) ("A suit 'so commenced' pursuant to Section 605(c)(5) is one which is commenced *following* the passage of 60 days after the submission of the claim to a contracting officer without a decision, not a suit that is commenced *before* the claims are submitted to the contracting officer.") (emphasis added)). Therefore, in determining that it did not have jurisdiction to consider Plaintiff's claims of interest on the $25,000 amount withheld and the $50,866 Settlement, the Government contends that the court in *Sarang I* "effectively concluded that it did not have jurisdiction over the complaint." *Id.* Accordingly, the court "was required to dismiss Sarang's complaint." *Id.* (citing *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (citations omitted)).

The Government also argues that the court does not have jurisdiction to adjudicate the claims alleged in the January 31, 2008 Second Amended Complaint, because the CO did not have authority to render the October 16, 2007 Decision On Remand. *Id.* (quoting *Sharman Co.* v. *United States*, 2 F.3d 1564, 1571 (Fed. Cir. 1993) (28 U.S.C. § 516 grants exclusive authority to the Department of Justice to act on matters in litigation, thereby divesting "the contracting officer of his authority to issue a final decision on the claim.") (citations omitted)).

**3. The Plaintiff's Response.**

The Plaintiff apparently has elected not to respond.

**4. The Court's Resolution.**

On May 25, 2007, the court in *Sarang I* determined that it did not have jurisdiction over the October 13, 2006 First Amended Complaint, because Plaintiff had not submitted the PPA interest claims asserted therein to the CO, pursuant to the CDA. *See Sarang I*, 76 Fed. Cl at 568 (citing 41 U.S.C. § 605(a)). Accordingly, the court should have dismissed the case on that date. *See Steel*, 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (citations omitted); *see also Tecom Indus.*, 24 Cl. Ct. at 614 (holding that a stay is not permitted under Section 605(c)(5) of the CDA in "a suit that is commenced *before* the claims are submitted to the contracting officer.") (emphasis in original). The October 13, 2006 First Amended Complaint asserted the same claims, *i.e.*, entitlement to PPA interest on the $25,000 contract payment and the $50,866 settlement. *See* First Am. Compl. at 5-6. Therefore, because the court did not have jurisdiction over the claims at the time they were first asserted, the court must dismiss the January 31, 2008 Second Amended Complaint, but this dismissal

is without prejudice.[18] *See Mullen* v. *Torrance*, 22 U.S. 537, 539, 6 L. Ed. 154 (1824) (Marshall, C.J.) ("[T]he jurisdiction of the Court depends upon the state of things *at the time of the action brought*[.]") (emphasis added); *see also Sharman*, 2 F.3d at 1569 (holding that jurisdiction over a claim must be determined "under the actual circumstances existing" at the time the claim first was filed).

Since Plaintiff's PPA interest claims now have been submitted to the CO and a Final Decision has been issued, upon filing a new complaint alleging these facts, the court will proceed to issue a final order on the merits of Plaintiff's PPA interest claims upon the timely re-filing of Plaintiff's Motion For Judgment On The Pleadings. *See* RCFC 12(c) ("After the pleadings are closed . . . any party may move for judgment on the pleadings.").

## IV. CONCLUSION.

For the aforementioned reasons, the Government's Motion To Dismiss is granted, and the January 31, 2008 Second Amended Complaint is dismissed, without prejudice. Likewise, Plaintiff's Motion For Judgment On The Pleadings is denied, without prejudice.

The Clerk of the United States Court of Federal Claims is directed to enter judgment in accordance with this Memorandum Opinion And Final Order.

**IT IS SO ORDERED.**

**s/ Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

[18] At no time prior to the July 16, 2008 Motion To Dismiss did the Government object to or seek reconsideration of the court's May 25, 2007 Memorandum Opinion and Order in *Sarang I*, on jurisdictional grounds or otherwise. In fact, following the issuance of the May 25, 2007 stay, the Government filed a November 21, 2007 Notice, pursuant to RCFC 52.2(b)(4), to allow Plaintiff an opportunity to amend the October 13, 2006 First Amended Complaint.